UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PATRICK SHIH, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-1577 |
| | § | |
| AETNA LIFE INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER REMANDING CASE

Before the Court is a motion to remand filed by the plaintiff, Patrick Shih, M.D., P.A. ("Dr. Shih").[1] (Dkt. 10). After careful consideration of the pleadings, the entire record, and the applicable law, the Court **GRANTS** the motion. This case is **REMANDED** to the 270th Judicial District Court of Harris County, Texas.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

Dr. Shih is a board-certified neurosurgeon. (Dkt. 1-4 at p. 2). While serving as an on-call specialist at the emergency room at Cypress Fairbanks Medical Center, Dr. Shih performed several emergency surgeries on a man, identified in Dr. Shih's pleadings as "M.U.," who suffered a traumatic spinal cord injury in a car wreck. (Dkt. 1-4 at p. 2). M.U. was covered by a preferred provider organization health plan ("the Plan") insured by Defendant Aetna Life Insurance Company ("Aetna"). (Dkt. 1-4 at p. 3). The parties agree that the Plan is governed by the Employee Retirement Income Security Act ("ERISA").

---

[1] The plaintiff is Dr. Shih's professional association, but for the sake of clarity the Court will treat Dr. Shih as if he were the plaintiff. (Dkt. 1-4 at p. 4).
[2] The state-court cause number is 2022-23644.

(Dkt. 10 at p. 5; Dkt. 1 at p. 2). Dr. Shih is an out-of-network provider under the Plan. (Dkt. 1-4 at p. 3).

M.U. executed an assignment of benefits under the Plan in favor of Dr. Shih, and Dr. Shih submitted claims for reimbursement to Aetna for the care that he provided to M.U. (Dkt. 1-4 at pp. 5–6). The Plan allows Aetna to make direct payments to service providers:

> **Payment of Benefits** *(GR-9N-32-025-04)*
>
> Benefits will be paid as soon as the necessary proof to support the claim is received. Written proof must be provided for all benefits.
>
> All benefits are payable to you. However, **Aetna** has the right to pay any health benefits to the service provider. This will be done unless you have told **Aetna** otherwise by the time you file the claim.

Dkt. 1-8 at p. 104.

However, the Plan contains an anti-assignment provision explicitly prohibiting the assignment of benefits to out-of-network providers:

> **Assignments** *(GR-9N-32-005-03)*
>
> An assignment is the transfer of your rights under the group policy to a person you name.
>
> All coverage may be assigned only with the written consent of Aetna. To the extent allowed by law, **Aetna** will not accept an assignment to an **out-of-network provider**, including but not limited to, an assignment of:
>
> - The benefits due under this group insurance policy;
> - The right to receive payments due under this group insurance policy; or
> - Any claim you make for damages resulting from a breach, or alleged breach, of the terms of this group insurance policy.

Dkt. 1-8 at p. 101.

Aetna partially reimbursed Dr. Shih. (Dkt. 1-4 at p. 6). Since Aetna paid less than 10% of the billed charges, Dr. Shih filed this lawsuit in Texas state court. (Dkt. 1-4). Dr.

Shih's pleading states causes of action for: (1) violations of Section 1301.155(b) of the Texas Insurance Code; (2) violations of Chapter 541 of the Texas Insurance Code; (3) violations of Chapter 542 of the Texas Insurance Code; (4) breach of an implied contract; and (5) a judicial "declaration that the exceptionally low reimbursements allowed by Aetna in this case . . . do not represent the 'preferred level of benefits' for [Dr. Shih's] services and thus do not comply with Texas law." (Dkt. 1-4 at pp. 6–11).

Aetna removed this case to this Court under the federal-question jurisdiction statute, 28 U.S.C. § 1331, on the basis that Dr. Shih's claims are completely preempted by Section 502(a) of ERISA. (Dkt. 1).

## **LEGAL STANDARD**

A defendant may remove to federal court a state-court civil action over which the federal court would have original jurisdiction. 28 U.S.C. § 1441(a); *see Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007). Because it implicates important federalism concerns, removal jurisdiction is strictly construed. *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921–22 (5th Cir. 1997). Any doubts concerning removal must be resolved in favor of remand, *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000), and the federal court "must presume that a suit lies outside [its] limited jurisdiction." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The removing party bears the burden of establishing by a preponderance of the evidence that federal jurisdiction exists and that removal is proper. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

Federal district courts have original jurisdiction over "all civil actions arising under

the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331. Under the complete preemption doctrine, a state-law cause of action may be recast as a federal claim that is subject to removal if the law governing the complaint is exclusively federal. *Vaden v. Discover Bank*, 556 U.S. 49, 61 (2009). The ERISA statute involves such an area of exclusively federal law: its comprehensive civil enforcement scheme "completely preempts any state-law cause of action that 'duplicates, supplements, or supplants' an ERISA remedy." *Lone Star OB/GYN Associates v. Aetna Health Inc.*, 579 F.3d 525, 529 (5th Cir. 2009) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004)). "In other words, even if the plaintiff did not plead a federal cause of action on the face of the complaint, the claim is necessarily federal in character if it implicates ERISA's civil enforcement scheme." *Lone Star*, 579 F.3d at 529 (quotation marks omitted).

ERISA's civil enforcement scheme is set out in Section 502(a) of the statute. *Id*. Section 502(a)(1)(B) of ERISA provides that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). "Therefore, if a party's state law claims fall under this § 502(a)(1)(B) definition, they are preempted by ERISA." *Lone Star*, 579 F.3d at 529.

## **ANALYSIS**

Aetna contends that Dr. Shih's claims against it implicate ERISA's civil enforcement scheme and are accordingly necessarily federal in character. (Dkt. 1 at pp. 2–3). Dr. Shih contends that his claims are not preempted because, among other things, the

anti-assignment clause in the Plan voids the assignment of benefits executed by M.U. in Dr. Shih's favor, stripping Dr. Shih of standing to sue under ERISA. (Dkt. 10 at pp. 6–7). The Court agrees with Dr. Shih.

  A. The *Davila* test

In *Davila*, the Supreme Court created a two-part test that lower courts use to determine whether ERISA completely preempts a state-law cause of action. For a state-law cause of action to be completely preempted by ERISA, the removing party must show that: (1) the plaintiff, "at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)[;]" and (2) "there is no other independent legal duty that is implicated by [the] defendant's actions[.]" *Davila*, 542 U.S. at 210.

    i. <u>The anti-assignment clause and Dr. Shih's standing to sue under ERISA</u>

"[W]hen an ERISA plan contains a valid anti-assignment provision, a putative assignment to a healthcare provider is invalid and cannot bestow the provider with standing to sue under the plan." *Dialysis Newco, Inc. v. Community Health Systems Group Health Plan*, 938 F.3d 246, 251 (5th Cir. 2019). The Plan, as previously noted, contains a broad anti-assignment provision that explicitly prohibits the assignment of benefits to out-of-network providers. (Dkt. 1-8 at p. 101).

Given the Fifth Circuit's holding in *Dialysis Newco* (and that of the case on which *Dialysis Newco* relies, *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 352–53 (5th Cir. 2002)) and the wording of the anti-assignment provision, Dr. Shih's argument against complete preemption is simple: "the assignment that [Dr. Shih] alleges [he] received from [M.U.] is a nullity, and [Dr. Shih] lacks even

derivative ERISA standing." (Dkt. 10 at p. 7).[3] According to this argument, since Dr. Shih never had standing to sue under the Plan, Dr. Shih could never have brought his claims under Section 502(a)(1)(B) of ERISA; and Aetna cannot satisfy the first prong of the *Davila* test. The Second Circuit, in a very similar case addressing an identical anti-assignment provision, has agreed with Dr. Shih's position. *See McCulloch Orthopaedic Surgical Services, PLLC v. Aetna Inc.*, 857 F.3d 141, 144, 146–48 (2d Cir. 2017) ("In sum, while the patient attempted to assign McCulloch the right to payment for the surgeries that McCulloch performed, this assignment was prohibited under the terms of the patient's health care plan. Aetna—which has not argued on appeal that the anti-assignment provision does not apply—has failed to establish that McCulloch is the 'type of party' who may bring claims pursuant to § 502(a)(1)(B)."). In response, Aetna makes two contentions: (1) *Dialysis Newco* is inapposite because "[n]o determination regarding the validity of the Plan anti-assignment provision has or could be made at this point" and Dr. Shih "can contest the validity of the Plan's anti-assignment provision in a later motion for summary judgment[;]" and (2) Aetna made a partial payment to Dr. Shih, which gives Dr. Shih a "colorable claim for ERISA plan benefits." (Dkt. 11 at pp. 4–5). The Court disagrees with Aetna.

—*The validity of the clause*

As to its first contention, Aetna does not argue that its anti-assignment clause is invalid or inapplicable; rather, it essentially argues that Dr. Shih has standing to sue under ERISA now because he might, theoretically, be able to establish his standing to sue under

---

[3] In his reply brief, Dr. Shih represents that he did not learn about the anti-assignment clause "until Aetna attached a copy of the plan to its Notice of Removal." (Dkt. 12 at pp. 4–5).

ERISA later by successfully contesting the validity of the anti-assignment clause.

The Court disagrees. Aetna wants to stay in federal court but also wants to retain its ability to rely on its anti-assignment clause. From a tactical standpoint, that is certainly understandable. However, as the Second Circuit noted when it rejected this argument in *McCulloch*, allowing Aetna to do that "would lead to a result that is both unjust and anomalous: [Dr. Shih] would be barred from pursuing state-law claims in state court on preemption grounds and from pursuing an ERISA claim in federal court for lack of standing." *McCulloch*, 857 F.3d at 148. More fundamentally, to accept Aetna's argument would be to allow Aetna to circumvent its burden, as the removing party, to prove by a preponderance of the evidence that this Court has subject matter jurisdiction. *See Manguno*, 276 F.3d at 723. The applicable legal test requires Aetna, not Dr. Shih, to show that Dr. Shih, "at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)[.]" *Davila*, 542 U.S. at 210. However, given the unequivocal language of the Plan's anti-assignment provision, Aetna cannot meet that burden without arguing that its own anti-assignment clause is invalid or otherwise inapplicable. *See Dialysis Newco*, 938 F.3d at 251; *see also McCulloch*, 857 F.3d at 148 (noting that Aetna "ha[d] not argued on appeal that the anti-assignment provision d[id] not apply"). While that may be a curious turn of events—and is without a doubt one that Aetna finds frustrating—that is what the law requires.

—*The partial payment*

Aetna's second contention is that Dr. Shih has a "colorable claim for ERISA plan benefits" because Aetna made a partial payment to Dr. Shih. (Dkt. 11 at pp. 4–5). Aetna

does not argue that it waived the Plan's anti-assignment provision; rather, it contends that Dr. Shih is trying to "have [his] cake and eat it, too" by pleading in state court that he has a valid assignment and then arguing in federal court that he does not. (Dkt. 11 at pp. 4–5).

The Court also finds this argument unpersuasive. The salient issue is not what Dr. Shih is *trying* to do; it is what Dr. Shih *can* do. Namely, again, the issue is whether Dr. Shih, at some point in time, could have brought his claims under Section 502(a)(1)(B) of ERISA, given the Plan's unequivocal anti-assignment clause. Aetna does not argue that its partial payment waived the clause, and in any event "courts have consistently found that direct payments are insufficient to demonstrate an intentional relinquishment of rights." *GVB MD, LLC v. Blue Cross and Blue Shield of Florida, Inc.*, No. 19-20455, 2019 WL 5889200, at *4 (S.D. Fla. Nov. 12, 2019); *see also Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, No. 13-CV-6551, 2014 WL 4058321, at *3 (S.D.N.Y. Aug. 15, 2014) ("Health insurance companies routinely make direct payments to healthcare providers without waiving anti-assignment provisions."). Indeed, if Aetna were to argue that its partial payment waived the anti-assignment clause, that argument would contravene the express language of the Plan, which allows Aetna to pay providers directly. (Dkt. 1-8 at p. 104). *See Atlantic Plastic and Hand Surgery, PA v. Anthem Blue Cross Life and Health Insurance Co.*, No. 17-4600, 2018 WL 1420496, at *6 (D.N.J. Mar. 22, 2018) ("[V]arious courts have rejected the argument that payment to a provider directly amounts to waiver of an anti-assignment provision, where the plan at issue authorizes direct payment to providers."); *see also Dialysis Newco*, 938 F.3d at 254–55 (explaining the "distinction between a direct-payment authorization and a full-on assignment of benefits")

("[A] direct-payment authorization and a prohibition against the assignment of benefits are distinct concepts, and they can exist side-by-side without being in conflict or causing ambiguity. . . . We reiterate the right to receive direct payment is separate from the right to sue for those payments.").

   B.  *The Court's ruling*

The Court concludes that Aetna has not met its burden to show by a preponderance of the evidence that federal jurisdiction exists and that removal was proper. On this record, the first prong of the Supreme Court's *Davila* test is not met.

## CONCLUSION

Dr. Shih's motion to remand (Dkt. 10) is **GRANTED**. This case is **REMANDED** to the 270th Judicial District Court of Harris County, Texas.[4] The Clerk is directed to provide a copy of this order to the parties. The Clerk is further directed to send a certified copy of this order via certified mail, return receipt requested, to the District Clerk of Harris County, Texas and the Clerk of the 270th Judicial District Court of Harris County, Texas.

Any other pending motions are **DENIED as moot**.

SIGNED at Houston, Texas on January 9, 2023.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE

---

[4] The state-court cause number is 2022-23644.